number 22 dash 1970. Okay. And, uh, Mr Listman, you're free to take the, uh, the podium. It's nice to see you here today. Now, just so I can understand, uh, you're going to do 10 minutes. Uh, your, your, your, your, uh, colleague, Lydia Laramore is going to take five minutes, right? Correct, Your Honor. Okay. Is the five minutes going to be part of your opening, uh, argument or would that be rebuttal? It will be five minutes for rebuttal. Okay. That's granted. Okay. And you can start whenever you'd like. Good afternoon, Your Honors. Evan Listman is pro bono counsel for Mr. Johnson. Mr. Johnson spent 15 months in prison for conduct that this court has already held was not a crime. Now he seeks a certificate of innocence, which is the first step in recovering damages for wrongful imprisonment under the unjust conviction and imprisonment act. Section 2513 sets three requirements for Johnson to obtain that certificate. The first two, which aren't at issue in this appeal, ask whether the petitioner was innocent of the crime charged and whether their conduct violated another state or federal law. The third, the district court here denied Johnson's certificate based exclusively on the third requirement, which precludes recovery when a petitioner by neglect or misconduct causes or brought about their own prosecution. The district court concluded that Johnson failed that element because the acts for which he was criminally charged were misconduct and that misconduct in some sense brought about his prosecution. This broad approach to the third prong was wrong for three main reasons. First, it focuses exclusively on whether the defendant engaged in misconduct, ignoring the statute's focus on causing one's prosecution, a phrase with an established legal meaning. Second, it defies the context of this element by rendering other provisions of the statute superfluous. And third, the interpretation guts the statute of its evident purpose by making it nearly impossible for any innocent defendant to qualify under this for a certificate. Instead, as the Seventh Circuit held in Betz, Section 2513's third prong codifies an estoppel principle, barring a certificate when a defendant misled the government into believing he had committed the elements of the offense when he really had not. Because we all agree Johnson didn't do that here, the district court's denial of the certificate should be reversed. I'd like to start with the plain text of 2513A's third prong. Its focus is on whether the defendant engaged in misconduct that caused the government to prosecute. You know, it's interesting. Cause is such a general term. Is it but-for cause? Is it proximate cause? Do you have a position on that? Yes, Your Honor. We believe that but-for causation would not be appropriate given the statutory language here. The statute directs our focus to a petitioner's effect on decisions made by an independent government actor, that is, the prosecutor. And we have to start with the fact that that independent actor is entrusted with the independent judgment to apply law to facts. And they only make those determinations of whether to prosecute someone by applying law to facts and satisfying themselves that every defendant's conduct has satisfied every element of a given offense. And because a petitioner independently wields that legal judgment, the only way a petitioner can be said to cause a prosecution is by distorting the underlying facts to make it seem as though the elements of a given crime were satisfied when they really were not. So you're saying it should be proximate cause then? Yes. If this court wanted to consider elementary principles of tort causation in the common law, we believe our interpretation fits with the proximate cause standard. When a prosecutor errors in applying law to fact, they are what you would call a superseding cause of the resulting injury, and that cuts off the causal chain from the defendant. The only way for the defendant, or petitioner in this case, to have stayed within that causal chain is to have misled them as to fact. And we don't believe that this interpretation is hardly unique to our reading of 2513. It appears across analogous government error contexts, including malicious prosecutions, Bivens, and 1983 claims. I could point this court to its decision in Agravery v. Young from 2004, which I'm happy to discuss in more detail later. But what all these cases recognize is that an official's erroneous legal judgment is the superseding cause of a given governmental injury. And the only way a defendant can interfere with those independent judgments by government actors is by misleading as to fact. So here, when the text says, cause a prosecution, the plain text commands, because of the word prosecution, that they interfere with a decision by a prosecutor. And interpreting it against this backdrop of well-established common law principles says that when a prosecutor makes a mistake of law, they are the superseding cause of the resulting injury. I mean, we, as your adversary points out, we recognize in our opinion, prior opinion with respect to Mr. Johnson, that his actions were malicious and some other choice language your adversary put in their brief. You know, that could be, you know, I suppose that gets us now maybe to do you need to show something besides what the charge, or can you consider the charge of conduct? And there seems to be some diverse opinions on that, whether you can do it. What is your position on that? Yes, Your Honor, some courts have focused on the distinction between offense and non-offense conduct. We don't believe that's Gregory in the Fourth Circuit case, I think. Yes, and it's one means of interpreting what we're getting at here. But the real question is what the petitioner did to cause the government to believe the elements were satisfied. It so happens that if, say, a petitioner satisfied four-fifths of a given required elements for a crime, that would be their offense conduct, and there would not be probable cause for the government to have initiated their prosecution. They would have to do something beyond the offense conduct, which misled the government to believe that the fifth and missing element was satisfied when it really wasn't. And, again, the only way that they can do such a thing is by distorting the underlying facts. You said misled. The words they use, well, I mean, I don't see misled in here. I see misconduct and neglect cause to bring about the prosecution. I know maybe Congress hasn't done us many favors with some of the vagueness in this, but why mislead? Why should that be the standard? I'm using mislead as a way to refer to the fact that they are engaging in some deceptive conduct as to the underlying facts. So their misconduct or neglect in some way created the impression for the government, false it turns out, that the elements of a crime were satisfied. And so the government's decision to prosecute them, fully believing that all the elements of the crime were satisfied, is by the fault of the petitioner. By contrast, in a case as Mr. Johnson's, when the government prosecutes him, despite what this court held in overturning his conviction, a total lack of evidence as to the material elements of Section 1001, there is no way that Mr. Johnson could have led the government, caused or brought about the government, to have a mistaken belief about materiality. Why do you say that? They could certainly have had the belief. They just didn't prove it when it came to trial. Yes, but Mr. Johnson had no role in the government's mistake. As this court held in overturning the conviction on plain error, the government's clear mistake that they could not satisfy materiality because Mr. Johnson didn't distort the facts to make them believe that his false statement did have any material effect on a relevant actor. And what are those factors, again, that the government misled on? Sorry, Your Honor. In this case, what are those factors? Yes, in this case, the government made a legal error as to the materiality requirement under Section 1001 as added by Congress through its 1996 amendments to that statute, and this court in overturning Johnson's conviction held that there was no relevant evidence presented at trial which could prove that Johnson's false statement in filing a false exhibit could have had a material effect on the only relevant decision-maker that the government referred to in prosecuting him, which was Judge Rebrano. When you started that answer, you said the government made a legal error? What was the legal error? The legal error was misunderstanding what was necessary to satisfy the materiality requirement under 1001. It sounds like it was an error of proof. They just didn't meet their evidentiary burden, right? I don't know how that's a legal error. It was a legal error in the sense that it's the prosecutor's job to apply law to fact, and so they have undistorted facts before them. They can evaluate them all on a fair playing field, and it was the government's mistake in believing that those facts that they fairly ascertained could satisfy the materiality element under this court and the Supreme Court's precedence for what materiality demands. In that sense, it is a legal error, and Mr. Johnson could have no effect on the government's mistake in that respect. Well, let me further that inquiry. What if the government's error had been maybe what could be considered a more reasonable one, something, a legal point of first impression? It got to the court of appeals, court of appeals ruled against. Would a person in your client's or defendant's position be entitled to relief under this statute? Your Honor, they would satisfy the third element because they could not be said to have caused or brought about their own prosecution. But I'd like to point out that this is only one of three elements in this statute. The first two prongs handle the vast majority of petitioners because petitioners have to prove that they've been held legally innocent and that they did not commit any of the acts charged or that they did not commit any other state or federal crime. So in that case, if their offense conduct had, say, violated another state crime, they would not qualify, but they would not be disqualified under our and BEX's interpretation of the third prong. If we favor your view of this matter, what case should we follow? You should follow the Seventh Circuit's interpretation in BEX. In BEX? Yes. All right. And in that case, the Seventh Circuit adopted the same estoppel principle that we advance here, and the Chief Judge Gregory advanced in his Graham dissent in the Fourth Circuit. And I see my time is closing. If I may conclude with a few remarks. Take your time. Sure. The district court's reading fails under the traditional tools of statutory interpretation. I didn't get to touch on some of the superfluity arguments, but, of course, that is a cardinal rule of statutory interpretation, and in our view, the district court's reading flatly fails this. It also guts the statute of its remedial purpose.  And I would really encourage this court to look to its decision in Egerberry v. Young from 2004. This court should adopt the estoppel reading advanced by the Seventh Circuit in BEX and reverse and remand this case to the district court with instruction to grant Mr. Johnson's certificate. Thank you. Thank you. And we'll hear from the government. If I may, Your Honors, may it please the court, my name is L.C. Wright. I'm Senior Litigation Counsel at the United States Attorney's Office here in the Eastern District of Pennsylvania and, in fact, was the trial attorney who has been, at least is thought to have misapplied the law and misunderstood the law in this case. I take issue with that.  28 U.S.C. 2513 is intended to redress the imprisonment of an innocent man who has been unjustly accused. That is, unjustly accused. It is, according to the case law, if you look at United States v. Graham, it's, in fact, an extraordinary, exceptional remedy. And the statute itself, the second part of it, it reads, and he did not by misconduct or neglect cause or bring about his own prosecution. Now, Judge Bartle, in fact, was there at the trial, and he is familiar and he was in the best position to make a determination as to the conduct of the defendant and whether that defendant had, in fact, committed misconduct. And I suggest to the court that the plain reading that's advanced in United States v. Graham is the one that should be adopted here. If you look at the conduct of this defendant, then he is anything but unjustly accused. It was misconduct, his volitional acts. He, in fact, and I don't think that this is subject to dispute, and it was, in fact, noted in this court's decision, he stole the identity of a lawyer, Delores Troiani, maliciously, and inserted himself in litigation that he had absolutely nothing to do with. He, in fact, said that he was Delores Troiani, and that was the false statement. And I know my friend Bob Zosmer, who's one of my colleagues who I talked to at length yesterday, advised me not to go down one. So I'm going to try not to go down that route. I, in fact, had an issue with this court's very respectfully determination, because the false statement in this case. Chip sailed. Yeah, that chip has sailed. But the false statement in this case, from my vantage point, was the actual representation that I'm Delores Troiani, and I am, in fact, didn't go to the underlying merits. But that said, that was a malicious act. It was a volitional act. It was an unnecessary act. Can I get you all maybe off track a little bit? You're certainly free to go back. But your adversary, at length, pointed out that you were talking about a lot of sort of post-conduct conduct, you know, the cover-up, the other stuff. It does take a pretty central position in your brief, and they're saying, how's this material? Maybe you could tell us. Well, Your Honor. If you consider the statute, how did that cause or bring about the prosecution? Well, Your Honor. That was in charge. Not looking at the post-conduct, which you can't, because the post-conduct goes to bets, which is what our adversaries say applies. We say that it doesn't. We say that it's in background that applies. But if you look at it, and if I can go back just a little bit before getting to Your Honor's question, the malicious filing was pre-decision. Right. We're not talking about that. I'm talking about he gets caught. He gets caught, Your Honor. Things are in your brief. And that goes to, and that portion goes to bets, which we don't believe is applicable. But our position is that under either the Fourth Circuit analysis or the Seventh Circuit analysis. You're talking about whether we can consider the charged conduct, right? Right. Okay. So under either one. This is sort of your alternative argument. If we don't agree with you, that. Exactly. Okay. Exactly. And that's with regard to bets. And it falls squarely within bets. But I understand that there was some, however you want to pitch it, misdeeds. But would that have caused the prosecution, though? Yes, Your Honor. These things that happened. Yes, Your Honor. If, in fact, you're a prosecutor and you're a fair-minded prosecutor working with agents, and you, in fact, see someone who has, in fact, stolen a lawyer's identity, represented themselves to be that lawyer, and then, in fact, filed something in a suit as an interloper in a suit that they had nothing, in fact, to do with that impugns the integrity of a client, then you're going to garner some attention if we can figure out who you are. And, in fact, Judge Rubino, the recently retired Judge Rubino, took it to the FBI, to the government, and, in fact, said, look, this is an issue. Figure out who it is. And it great pains. And if you look at the record below, you see that there was, in fact, a Byzantine trail that led to this defendant. And this isn't the first time that he's made. You look at the precinct's investigation report. This isn't the first time that he's made false declarations in front of courts, and he's been convicted of that, actually. But that said, that's the sort of thing that will, in fact, pique the interest of federal law enforcement authorities, especially when it's happening in the federal courts. This was more than just a mere nuisance. You can imagine the sort of circumstance you could have of anyone, any time, and it's remarkable that maybe that's the way it is, but anyone, any time, can steal a lawyer's identity and start filing stuff in an ongoing federal lawsuit. That's more than a nuisance. I suggest that it's an affront. And it's an affront to the federal courts that someone would do that and would be allowed to do that. And then, after being caught, and a jury making a determination beyond a reasonable doubt that they were guilty, understanding that the idea, and if there's a mea culpa, OK, I didn't ask Judge Rubino, perhaps, to correct questions on the stand, or some other questions on the stand. But with regard to most of the elements, they were met. The stealing of the lawyer's identity, the filing of something in that lawyer's name when this individual was not that lawyer. And I suggest to you that that's more than just a nuisance. And if you look at statutory construction in relationship to the Graham case, it says what it says. And if you look at the Valley District Court case, which is a very scholarly opinion that talks about the way that 2513, and rejects that, and talks about the way that 2513 should be interpreted, then, in fact, it should be interpreted giving credit to its ordinary meanings. You don't need any modifiers. It, in fact, says, and he did not, by misconduct or neglect, cause or bring about his own prosecution. It doesn't say, and he did not, by misconduct or neglect, unrelated to the underlying crime, bring about his own prosecution. Or, and he did not, by misconduct or neglect, cause or bring about his own prosecution by misleading the government as to whether each and every element of each of every offense could be satisfied. As a matter of fact, this court understands when we talk about making a determination as to whether someone can be prosecuted, not all of that information comes necessarily from the target, or the defendant himself or herself. There could be evidence that, in fact, shows that he or she, in fact, filed this thing, or didn't, or he or she, in fact, filed it, and he or she, in fact, stole the lawyer's identity. But there could be some other evidence that shows other elements. And, you know, perhaps the government would not have been able to show those, to meet its burden that way. So we had a conversation earlier about causation. And it seems as though if we follow but for causation, then clearly, if he hadn't done this, he wouldn't have been prosecuted. So that would satisfy but for causation. But your friend says we should think about proximate causation, and that the government, the prosecution intervened and broke the proximate cause. So how do you say we should think about causation? And is the best reading of this statute? I think the best reading is the plain reading, and that's a but for. He brought it about had he not participated in misconduct. And I suggest to this court, very respectfully, that the idea that someone steals, and I know I may be jumping up and down and beating a dead horse, but the idea that someone steals a lawyer's identity and files a document that impugns the integrity of a client, and can in no uncertain terms be thought of as anything but misconduct. Under, I mean, what else could that sort of volitional act be other than misconduct? And if you look at the plain reading of the carve-out position, the carve-out portion of that statute, it falls squarely within that. That it is, in fact, it falls squarely within that. I guess the argument would be, well, yes, it's misconduct of a sort, but he was not guilty of this offense, and so this misconduct shouldn't have brought about his prosecution. Well, that's not, but that's, respectfully, Your Honor, that's not the plain reading of the statute. He wasn't guilty of the offense because the government failed to prove one of the elements, just that the government had failed to prove identity that it was him. It's just another element, and that's an element that the government failed to prove, that I failed to prove. The government failed to prove that element. The fact that he's not guilty doesn't make a difference. You have those first two elements that talk about whether someone is actually innocent and whether they created the acts. But despite that, Congress chose to put in a third element, and they could have put in a third element, and that was, and he did not, by misconduct or neglect, cause or bring about his own prosecution. They didn't have to do that, but they did. And they did, and again, this is an exceptional remedy reserved for an innocent man unjustly accused. Mr. Johnson was far from unjustly accused in light of his conduct. Now, even if the court, and I suggest, respectfully, again, that the court shouldn't reject the government's position on this, if, in fact, you look at Betts, one of the things that they say as far as post-conduct, whether, in fact, someone would have, you know, outside of the actual conduct itself, that was part of the crime and part of the acquitted conduct, it was misconduct in this case, is if, in fact, someone shows some sort of consciousness of guilt to law enforcement. Well, in this case, you have just that. You have a circumstance where Judge Rubino issued an order, and at the meantime, you know, then later on, you know, we were tracing things through this devout player-hater, this devout player-hater user name. And you find him down, you find him within, you know, 20 minutes of reading, of accessing, you can see through the computer that he, in fact, accessed the, you know, was repeatedly accessing the documents, and then he sees that it's been, like, uh-oh, it's been stricken from the record. My false filing's been stricken from the record, and this district court judge in Philadelphia has said that he's referring it to the authorities. And what does this defendant do? What does Mr. Johnson do? Well, at that point, he tries to eliminate evidence that it's him. He tries to make that Byzantine trail go cold by deleting his email account and the user name. And then when law enforcement went to talk to him, and law enforcement, in fact, knew something two years later, he, in fact, lied to him, and they knew that he lied to them, and it led them to say, well, why is he lying to us? Well, because he didn't try to resolve the matter. He said, well, no, I'm not. I never emailed Dolores Proiani, Ms. Constance's lawyer, but he did, and the government knew that at the time. That wasn't true. And then he went on to say that not only did I not email her, I was never used, never had an account developed, player hater. Well, that wasn't true. If you follow through a Byzantine trail, if you look at the record, see that it is. That wasn't true. And then he said that my email account had been, or my Pacer account had been compromised. Well, that wasn't true either. His Pacer account had not been compromised, and he has a very active account. As a matter of fact, I think this court can take judicial notice that since 1982, he's been involved in 287 separate cases. And as a matter of fact, 261 was his suit against me, but he's been involved in 279. But is that material in any way to the issue here? Well, Your Honor, I think that it goes to his misconduct as to whether he's someone who has been doing things with his daughter. This statute doesn't say he's a bad guy. You know, you've got to prove he's a bad guy. This misconduct caused this prosecution. Well, Your Honor, for the reasons that we, especially for the reasons that I articulated earlier, it did. Because he, in fact, stole an identity, and it was referred to, he stole the identity of a lawyer, and he made a false filing in that lawyer's name in a case that he had nothing to do with. And it was referred by the district court for the government to look at. So it did, in fact, do that. And then with regard, even under bets, he did things that led law enforcement to believe that he, in fact, did something that led the government to believe that he was guilty of the crime that was outside the actual conduct that made up the crime. I think my time is up. I appreciate the... All right. Thank you, counsel. Thank you, Your Honor. And we'll hear rebuttal. Good afternoon, Your Honors. Lydia Laramore, pro bono counsel for Mr. Johnson. If I may, three points in rebuttal. First, I'd like to return to this court's decision when it overturned Mr. Johnson's conviction. This court emphasized that his conviction was an outcome abhorrent to our legal system because we don't just convict people for being bad. And I think that's precisely what the government is encouraging here. Not only should we prosecute people for just being bad, but we should also be able to compensate them afterwards for that misconduct. And I think it's really important to realize that nobody here is denying that Mr. Johnson engaged in misconduct. But that is not the central inquiry under the statute. The central inquiry is whether that misconduct or neglect caused or brought about a prosecution. And when it comes to answering that question... Stop there. If the misconduct didn't cause the prosecution, what did? We believe that the government's error in applying the substantive law at issue, which is the false statement offense, to Mr. Johnson's conduct is what caused the prosecution. We don't think that this was just evidentiary insufficiency. We think that this court, first of all, said that there is no evidence in the record to support the materiality of the false statement at issue. And moreover, this court found that the false statement wasn't relevant, let alone material. And relevance is necessarily antecedent to materiality. And so we think that given the lack of evidence in the record for materiality or even relevance, the government just made a big legal mistake. And that was ultimately the cause of Mr. Johnson's erroneous prosecution. We said the government failed to prove its case because it didn't call the judge, the one person who could have spoken about materiality. Why isn't that just a failure of proof? Nothing more than that. The government did elicit testimony from Judge Brennau. I think this court just held or just found that the testimony that it did elicit from Judge Brennau was not sufficient to to establish materiality or even relevance. And also, I think it's relevant that this court made that decision under a plan error standard. So that error should have been clear to the government when it was charging. And so the government just didn't have probable cause when it was charging or when it was trying to prove the case. I mean, apparently they had the evidence. We don't think that there's any indication in this court's decision overturning his conviction that they had the necessary evidence. And so I think returning to, for a moment, Graham and Valle, the cases that the government relies on. Those cases are they just don't help us get to what it means to cause or bring about a prosecution. Neither case is focused on that language. Both cases really focus on what kind of misconduct or neglect is relevant in this inquiry. And we're not drawing some sort of strict post-offense or offense conduct line. We think that the relevant test does cut in that direction generally, where it's typically post-offense conduct that is relevant. That's all the examples from the legislative history that most courts that have considered this issue have cited are examples of post-offense conduct. So the inquiry might roughly cut that way, but the question is whether something caused or brought about a prosecution. And neither Graham nor Valle really ask those questions, let alone answer them. I think it's also relevant that all charged acts are going to be forms of misconduct or neglect. The government doesn't typically prosecute people for being good. And so if Congress had wanted to disqualify every single person who engages in some kind of misconduct, we don't think that they would have provided petitioners with a way to satisfy the second element of the statute when they did commit the act to charge. So the government's argument creates a sort of odd superfluidity there. And finally, I would like to just mention the government's argument that Mr. Johnson's obstructive conduct after the submission of the false precipice is disqualifying under bets. We don't think the government, sorry, we don't think this court has to consider that argument. We think that the government has forfeited it. The district court made no factual findings that would support its application in this case. And we don't think that the underlying record supports it. The trial transcripts that my friend was referring to earlier, that's not even in the record of this case. And the district court never mentioned Mr. Johnson's conduct with the FBI agent. So we just think that that issue has been forfeited. But even if this court does consider it, we think Johnson still prevails. We think that, you know, the government has not proved that they had probable cause, even with Mr. Johnson's alleged misconduct. So to conclude, Mr. Johnson was wrongfully convicted. He spent 15 months in prison for non-criminal conduct, and he is entitled to a certificate of innocence. Thank you. We gave your friend another couple of minutes. If you want to talk to your sponsor, if there's anything else that you've come up with, we'll give you a chance. I think we're good. Okay, good. All right. Thank you. All right. Well, thank you, counsel, for your excellent arguments and briefing here. We especially want to thank counsel for amicus. We appointed them. And they are students, as I understand it, right, which is they did a terrific job, as did Appellee's counsel. He's not a student, though. But we thank counsel for their – and we thank you for taking on that representation, and we're grateful for your amicus contributions here. But excellent job, argument, and in the papers.